IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br>v.<br><br>All dogs located at 14275 US-301, New Zion, South Carolina 29111, Parcel ID: 272-00-06-009-00, 272-00-06-007-00, and 14198 US-301 New Zion, South Carolina 29111, Parcel ID: 272-00-08-015-00<br><br>    *Defendants* in rem. | Civil Action No.: 2:22-cv-03518-RMG |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE

The Plaintiff, the United States of America, brings this Complaint and alleges as follows, in accordance with Supplemental Rule G(2), Fed. R. Civ. P.

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 7 U.S.C. § 2156(f) for the forfeiture of dogs seized from 14275 US-301, New Zion, South Carolina 29111, Parcel ID number 272-00-06-009-00 ("Butler Property 1"), Parcel ID: 272-00-06-007-00 ("Butler Property 2"), and 14198 US-301, New Zion, South Carolina 29111, Parcel ID: 272-00-08-015-00 ("Butler Property 3"), that were involved in a violation of the animal fighting venture prohibition section of the Animal Welfare Act, 7 U.S.C. § 2156. This action also seeks the forfeiture of any offspring these seized dogs may have before entry of a final order of forfeiture.

### DEFENDANTS *IN REM*

1

2. The Defendants *in rem* are pit bull type dogs seized from properties in Richland County associated with John Edward Butler ("Butler"). At the time of the seizure, there were approximately thirty five pit bull type dogs located at 14275 US-301, New Zion, South Carolina 29111, Parcel ID number 272-00-06-009-00, Parcel ID: 272-00-06-007-00, and 14198 US-301, New Zion, South Carolina 29111, Parcel ID: 272-00-08-015-00.

## KNOWN POTENTIAL CLAIMANTS

3. The person known to the United States who may claim an interest in the Defendants *in rem* is John Edward Butler. The United States will provide direct notice of this action to this possible claimant.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345 and 1355. Upon the filing of this Complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper pursuant to 28 U.S.C. § 1355(b) because acts and omissions giving rise to the forfeiture took place in the District of South Carolina.

## STATUTORY BASIS FOR FORFEITURE

6. The federal Animal Welfare Act, 7 U.S.C. § 2131, *et seq.*, defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." 7 U.S.C. § 2156(g)(1). It is illegal to sponsor or exhibit an animal in an animal fighting venture. 7 U.S.C. § 2156(a)(1). It is also illegal to sell, buy, possess, train,

transport, deliver, or receive an animal intended for use in an animal fighting venture. 7 U.S.C. § 2156(b).

7. The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(f). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* In addition, "[n]ecessary care including veterinary treatment shall be provided while the animals are so held in custody." *Id.*

8. The statute also contemplates forfeiture of seized live animals. Specifically,

> [a]ny animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct.

*Id.* The costs incurred in caring for animals seized and forfeited under this section "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found, resides, or transacts business." *Id.*

9. As explained below, the Defendant *in rem* are animals "involved in . . . violation[s]" of 7 U.S.C. § 2156 and are therefore subject to forfeiture to the United States of America pursuant to 7 U.S.C. § 2156.

**FACTUAL BASIS FOR FORFEITURE**

3

10. Dog fighting is a violent contest in which two dogs that are bred and conditioned for fighting are released by their owners or handlers in a controlled environment to attack each other and fight for purposes of entertainment or gambling. Fights usually end when one dog withdraws, when a handler "picks up" his dog and forfeits the match, or when one or both dogs die.

11. Dog fighters fight dogs with a goal of obtaining "Champion" or "Grand Champion" status for their dogs, which is achieved by winning three or five fights, respectively. They maintain contact with other dog fighters around the country and can generate substantial income from gambling on dog fights and from the sale and breeding of fighting animals. Once a dog fighter locates an opponent and agrees upon terms, the match is "hooked," or set up. The dog then undergoes a conditioning process that dog handlers refer to as a "keep." A "keep" is typically conducted for six to eight weeks before the scheduled match and involves a training program that may include running and exercising the dogs away from public view, the use of devices such as "spring poles" and "flirt poles" to build jaw strength and increase aggression, and the administration of drugs, vitamins, and other medicine.

12. Dog fighters typically do not start setting up matches for a dog until the dog reaches at least eighteen months to two years of age. Until then, dog fighters may test the dog out by "rolling" it or having the dog participate in short fights to assess the dog's demeanor. Thus, it is common for dog fighters to possess multiple young dogs who are in the process of being trained to fight.

13. Dogs who have been fought may have scars, puncture wounds, swollen faces, or mangled ears. Scars from organized dog fights are commonly found on the face and front legs, as well as on hind ends and thighs. The majority of the adult Defendants *in rem* had such scarring.

14. In the United States, dog fighting ventures typically involve "pit bull"-type dogs, which dog fighters prefer for their compact muscular build, short coat, and the aggression that some display toward other dogs. A dog fight occurs when two dogs are knowingly released by their handlers in a controlled environment to attack each other and fight. The fight ends when one dog withdraws, when a handler "picks up" their dog and forfeits the match, or when one or both dogs die.

15. It is a common practice for those involved in training and exhibiting fighting dogs to possess several dogs at one time. This practice is followed for several reasons. First, dog fighters maintain a stock of dogs at different weights and both sexes because in dog fights, dogs are matched against other dogs to within a pound of the same weight against dogs of the same sex. Maintaining a stock of several dogs thus increases the odds of owning a dog whose weight meets the requirements for a match being solicited by an opponent.

16. Further, dog fighters must possess an inventory of dogs because dogs often die or are badly injured during fights. Dogs that lose fights or fail to show "gameness" are often killed. It is not uncommon for dogs that lose matches to be killed in cruel, torturous, and inhumane ways as punishment.

17. Dog fighters also maintain multiple dogs in order to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline. Possessing multiple dogs increases the prospects of owning a dog who will become a Champion or Grand Champion. Dog fighters also routinely test and evaluate their dogs to determine those that exhibit aggressive behavior, including against their own dogs.

18. Dog fighters select the strongest, most capable fighting dogs and selectively breed, sell, and fight only those dogs that display particular traits. Some of these traits are: (1) "gameness"

or aggressiveness and propensity to fight other dogs; (2) a willingness to continue fighting another dog despite traumatic and/or mortal injury; and (3) cardiovascular endurance to continue fighting for long periods of time and through fatigue and injury. Dog fighters may keep multiple dogs at a time in order to maintain a stock of dogs at different weights and both sexes for dogs to be matched for a fight according to weight and sex; to selectively breed, sell, and fight dogs displaying certain traits or to otherwise advance a particular dog fighting bloodline; and to have a sufficient number of dogs to fight dogs more than two to three times a year.

19. Another sign of dog fighting is the presence of pit bull-type dogs on heavy or excessive chains or housed individually in pens or crates. Persons engaged in dog fighting take steps to restrain or isolate dogs used for fighting from one another to prevent them from fighting at unintended times. They may also keep younger dogs they intend to use for fighting out of reach of other dogs to discourage normal socialization. Heavy chains are used to develop neck strength in dogs used for fighting.

20. In the summer of 2022, USDA-OIG met with two Confidential Human Sources ("CHS"). These sources provided information on related to a large-scale dog-fighting venture called the Carolina Classic, which was due to commence on September 24th, 2022.

21. One of the sources stated that several dogfighting teams from across the east coast would be attending the Carolina Classic and the host for the Carolina Classic was the dogfighting kennel named Secret 6, which is comprised of six individuals and affiliates of that kennel. The CHS also stated that other kennels and dogfighters located in South Carolina would be attending the Carolina Classic. The CHS provided a list of those kennels and dogfighters to Special Agent McPhillips.

22. On September 6, 2022, Special Agent McPhillips conducted surveillance on Butler Property 1, Butler Property 2, and Butler Property 3. On all three properties, dogs were observed in isolation from each other. The dogs were wearing thick collars attached to heavy chains weighing approximately 40 to 60 pounds that were staked into the ground or wrapped around trees. The dogs displayed severe scarring around the face, neck, brisket, and lower extremities. Additionally, a dogfighting PIT was observed on Butler Property 3 with a break stick located inside of the PIT with visual teeth marks on the break stick). The dogs also appeared to be emaciated due to lack of body weight. All of the aforementioned facts and elements, based on Special Agent McPhillips knowledge, training, and experience, were believed to be associated with organized dog fighting.







23. On September 25, 2022, a federal search warrant was executed on Butler Property 1, Butler Property 2, and Butler Property 3 with thirty-five pit bull type dogs being seized. Also seized at the time were dog teeth, break sticks, and six sets of swabs of suspected blood stains, as well as thick chains & collars from outside and multiple cell phones.

24. Based on the information and allegations set forth herein, there is a factual basis to support a reasonable belief that the Government will be able to meet its burden of proof at trial to show that Defendants *in rem* are subject to forfeiture under the provisions of 7 U.S.C. § 2156(f).

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the Defendants *in rem*; that due notice be given to all

parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* be forfeited to the United States of America for disposition according to law; that the Court enter a judgment for costs associated with the care of the Defendants *in rem* pursuant to 7 U.S.C. § 2156(f) should any interested party file a claim for the Defendants *in rem*; and that the United States of America be granted such other relief as this Court may deem just and proper.

       Respectfully submitted,

       Adair F. Boroughs
       United States Attorney

       <u>s/Carrie Fisher Sherard</u>
       CARRIE FISHER SHERARD
       (Fed. ID. #10134)
       Assistant U.S. Attorney
       U.S. Attorney's Office
       District of South Carolina
       55 Beattie Place, Suite 700
       Greenville, SC 29601
       Tel: (864) 282-2111

       *Attorney for the Plaintiff*

DATED:  October 11, 2022